UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20408-CIV-TORRES

SELIG SUSSMAN, as Trustee of the
Florida Realty Mortgage Trust #04-034,

    Plaintiff,
vs.

ALLEN E. WEINTRAUB, *et al.*

    Defendant.
_____/

WASHINGTON MUTUAL BANK,

    Plaintiff,

vs.

MICHELE M. WEINTRAUB, *et al.*

    Defendant.
_____/

**ORDER ON PLAINTIFF'S SELIG SUSSMAN'S MOTION
FOR SUMMARY JUDGMENT OF FORECLOSURE**

This matter comes before the Court on Plaintiff Selig Sussman's Motion for Summary Judgment of Foreclosure [D.E. 169]. A lengthy hearing was held on February 5, 2007. The Court has reviewed the motions, responses and other papers filed in this case, as well as considered argument of counsel. This matter is now ripe for disposition.

### *I. BACKGROUND*

This is a mortgage foreclosure action against Allen E. Weintraub and Michele M. Weintraub (the "Weintraubs") with respect to real property owned by the Weintraubs located at 690 Massini Avenue, Golden Beach, Miami-Dade County, Florida (the "Property"). On July 14, 2004, the Weintraubs executed and delivered a promissory note

("Note") to Florida Realty Management Corporation in the amount of $1,000,000, and a first mortgage and security agreement ("Mortgage"), subsequently recorded on July 26, 2004. Florida Realty assigned the Note and Mortgage to Plaintiff and the assignment was recorded on July 30, 2004. The Weintraubs have been in default under the Mortgage since September 1, 2005. On November 8, 2005, Selig Sussman ("Sussman" or "Plaintiff") instituted his action to foreclose on the Property.

Sussman filed the Motion for Summary Judgment of Foreclosure on December 11, 2006. A response was never filed. Local Rule 7.1.C of the Local Rules of the United States District Court for the Southern District of Florida provides that each party opposing a motion shall file and serve an opposing memorandum of law not later than ten (10) days after the motion is filed. Failure to do so may alone be deemed sufficient cause for granting the motion by default. Nonetheless, the Court has considered the merits of the Motion and reviewed the record.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Imaging Bus. Mach., LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1189 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c)). In deciding a summary judgment motion, the court must view all the evidence and make all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citing *Cruz v. Public Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).  Thus, the task is to determine whether, considering the evidence in the light most favorable to the plaintiff, there is evidence on which the trier of fact could reasonably find a verdict in their favor.  *See Anderson,* 477 U.S. at 251; *Hilburn*, 181 F.3d at 1225.

### III.   ANALYSIS

The Weintraubs do not dipute the validity of the Note or the Mortgage.  There is no factual dispute that all conditions precedent to the bringing of the foreclosure action have either been met or waived.  Defendants have not set forth any viable affirmative defenses to Plaintiff's entitlement to foreclose, and Defendants have not stated any valid counterclaims against Plaintiff.

#### A.   *Affirmative Defenses*

Defendants alleged that there were conditions precedent to foreclosing on the Mortgage.  Counterclaims and Affirmative Defenses at ¶ 24(A).  The Court finds, however, that all conditions precedent were waived in Paragraph 9(B) of the Mortgage.  Paragraph 9(B) of the Mortgage provides in part:

> [t]hat if any of the sums of money herein referred to are not promptly and fully paid as the same become due and payable, the same shall be considered a default of this Mortgage and the Promissory Note, and . . ., at the option of the Mortgagee, without notice or demand, suit at law or in equity may be prosecuted as if all moneys secured hereby had matured prior to its institution.  There are no conditions precedent whatsoever to Mortgagee exercising any of the rights or remedies granted Mortgagee in this Mortgage.

Furthermore, the Mortgage states that the Weintraubs acknowledge their waiver of affirmative defenses and Plaintiff's right to accelerate upon default.  Paragraph 26 of the Mortgage reads as follows:

> This document is the entire agreement between the parties . . . THE MORTGAGOR ACKNOWLEDGES THAT THE FOREGOING MAY RESULT IN A MODIFICATION OF THE COMMON LAW RULES OF WAIVER AND ESTOPPEL.  THE MORTGAGOR AFFIRMATIVELY STATES THAT SUCH MODIFICATION IS INTENDED.

(emphasis in original).  "A person may waive any legally entitled rights, including rights guaranteed by the Constitution, conferred by statute or secured by contract . . . . If the waiver is clear and unambiguous it shall be given intended force and effect." *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1419 (M.D. Fla. 1989) (citations omitted); *see also Scarborough Assoc. v. Fin. Fed. Sav. & Loan Ass'n of Dade County*, 647 So. 2d 1001, 1003 (Fla. 3d DCA 1994) (enforcing waiver of affirmative defenses in a note modification agreement, holding waiver was valid and enforceable where it stated that principal amount of note plus interest was "free and clear of any defense, setoff or counterclaim").

The Weintraubs also contend that Sussman was obligated under the mortgage documents to provide 15 days notice of default by certified mail.  Counterclaims and Affirmative Defenses at ¶ 24(B).  The mortgage documents do not impose any such condition.  Where it appears that the Defendant cannot succeed under any set of facts which it could prove, an affirmative defense is insufficient as a matter of law.  *EEOC .v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1008 (11th Cir. 1980); *see also Wydler v. Bank of America, N.A.*, 360 F. Supp. 2d 1302, 1306 n.1 (S.D. Fla. 2005) (noting that "[w]here exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported allegations") (citations omitted).

The Weintraubs alleged that Plaintiff held funds in escrow, which had been paid by Defendants, that were in excess of the money required to be escrowed for taxes and

insurance. The Weintraubs claim that such money should have been credited to future payments, so that they would not have been considered in default. Counterclaims and Affirmative Defenses at ¶ 25(A). Paragraph 4(D) of the Mortgage, however, required Defendants to exercise their option to request either a credit of the excess against future indebtedness, or refund from Sussman. Paragraph 4(D) of the Mortgage provides:

> [If] the amount of the Funds held by the Mortgagee, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments and insurance premiums, shall exceed the amount required to pay said items as they fall due, such excess shall be credited against future payments or refunded to the Mortgagor, ***at the option of the mortgagor***.

(emphasis added). First, there were no such excess funds in escrow at the time the Weintraubs defaulted. D.E. 169, Ex. 1, Affidavit of Default and Indebtedness in Support of Plaintiff's Motion for Summary Judgment. There are only approximately $3,000 in escrow today, constituting interest on the $58,415.54 in insurance proceeds received in January 2006 from Citizens' Insurance Group, and which would not have been available for the Weintraubs to make a payment in 2005 at the time they defaulted. Second, there is no evidence that Defendants exercised their rights to request either a credit of any alleged excess funds or a refund.

The Weintraubs further assert that had Sussman not forced-placed insurance on the property at a cost of $16,557.00, "there would have been enough monies in escrow that should have been credited to the Defendants so that Defendants would not be allegedly in default under the terms of the mortgage." Counterclaims and Affirmative Defenses at ¶ 25(E). Despite Allen Weintraub's allegations that he had properly insured the Property through Global Insurance Group, he asserted the Fifth Amendment privilege against self-incrimination with respect to each question regarding the validity of this

insurance. The inference to be drawn in this civil proceeding is that the insurance was invalid. The Court is permitted to make adverse inferences about a party in a civil action when that party refuses to testify in response to probative evidence offered against it. *Baxter v. Parmigiano*, 425 U.S. 308, 318 (1976); *United States v. A Single Family Residence & Real Prop. Located at 900 Rio Vista Blvd., Ft. Lauderdale*, 803 F.2d 625, 629 n. 4 (11th Cir. 1986); *S.E.C. v. Incendy*, 936 F. Supp. 952, 955 (S.D. Fla. 1996) ("In this Circuit, the Fifth Amendment does not prohibit adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").

Defendants also seek to set off against any obligation due Sussman an amount corresponding to what they claim is a reduction in the discount corresponding to the 2004 ad valorem taxes on the Property. The Weintraubs allege that Fla. Stat. § 501.137 requires Plaintiff, as a lender of money, to "properly pay the taxes or insurance premiums when the taxes or premiums become due and adequate escrow funds are deposited, so that the maximum tax discount available may be obtained with regard to the taxable property and so that insurance coverage on the Property does not lapse." Counterclaims and Affirmative Defenses at ¶ 26(A). Defendants claim that Sussman did not pay the taxes until February 2005, thereby violating the statute and having Defendants suffer penalties for not paying at the earliest possible time. The record shows, however, that Sussman paid the 2004 ad valorem taxes on November 9, 2004. D.E. 169, Ex. 2, Pl's Escrow Disbursement Account. Therefore, no issue of fact exists in this record to withhold entry of summary judgment against the Weintraubs' affirmative defenses.

### B.      *Counterclaims*

#### 1.   *Count I - Breach of Contract*

Count I alleges a counterclaim for breach of contract, claiming that at the time of Defendants' default "Defendants had in escrow with the Plaintiff monies which were far in excess of any monies required to be escrowed, pursuant to the Mortgage, for taxes and insurance." Counterclaims and Affirmative Defenses at ¶¶ 33, 54. The Weintraubs defaulted on September 1, 2005. On that date, there were only $28,056.64 in escrow, which was insufficient to cover the obligations due under the Note and mortgage. D.E. 169, Ex. 1, Affidavit of Default and Indebtedness in Support of Plaintiff's Motion for Summary Judgment. Also, the Weintraubs did not request a credit or a refund of any excess funds from Sussman as required by Paragraph 4(D) of the Mortgage.

Defendants also claim that Sussman breached Paragraph 3(D) of Mortgage, which provides in pertinent part:

> In the event any sum of money becomes payable under such [insurance] policy or policies, the Mortgagee shall have the option to receive and apply the same on account of the indebtedness hereby secured against payment of principal in the inverse order of their maturity, or to permit the mortgagor [Weintraubs] to receive and use same, or any part thereof, for other purposes, without thereby waiving or impairing any equity, lien or right under and by virtue of this mortgage.

Defendants argue that Sussman breached this provision of the Mortgage "by failing to properly apply the insurance proceeds." Counterclaims and Affirmative Defenses at ¶ 36-37. This Court's Order on Plaintiff Selig Sussman's Motion for Authority to Apply Windstorm Insurance Proceeds in Accordance With Terms of Mortgage [D.E. 154] previously determined that Sussman could choose to apply insurance proceeds to reduce the principal balance owed by Defendants. Sussman did so and reduced the principal

balance due on the Note and Mortgage by the $58,415.54 in insurance proceeds that were paid out as a result of damage to the Property caused by Hurricane Wilma during October 2005. D.E. 169, Ex. 1, Affidavit of Default and Indebtedness by Steven Sussman in Support of Plaintiff's Motion for Summary Judgment. This payment does not affect Defendants' default, however, as Defendants defaulted under the Mortgage on September 1, 2005. At the time of default, there were insufficient funds in escrow to make the payment needed to avoid Defendants' default.

The Weintraubs also allege that, notwithstanding payment of $58,415.54 in insurance proceeds due to damage sustained by the Property during Hurricane Wilma, Sussman did "not plac[e] proper insurance on Defendants' property, thereby causing Defendants to lose the value of their real and personal property which was not properly insured." Counterclaims and Affirmative Defenses at ¶ 38. There is no evidence in the record to support Defendants' conclusory contention.

### 2. Count II - Breach of Fiduciary Duty

Defendants allege in Count II of their counterclaim that Sussman was their fiduciary. "To establish a cause of action for breach of fiduciary duty under Florida law, a party must plead the existence of a fiduciary relationship and a breach thereof, which results in damages." *Southtrust Bank & Right Equip. Co. of Pinellas County, Inc. v. Export Ins. Svcs., Inc.*, 190 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002) (citing *Moss v. Appel*, 718 So. 2d 199, 201-202 (Fla. 4th DCA 1998)). Moreover, the facts supporting a claim for breach of fiduciary duty must be pled with particularity. *Parker v. Gordon*, 442 So. 2d 273, 275 (Fla. 4th DCA 1983) ("it would be necessary to state with particularity the facts which purportedly created the duty that was breached, so that the court could determine as a matter of law whether there was such a duty"). Here, there are no allegations by

Defendants that they either reposed confidence in Sussman, nor that Sussman accepted any such duties.  In an arms' length transaction, "a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. 5th DCA 2003).  Florida courts have recognized that "[g]enerally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994).  Although fiduciary relationships between lenders and customers have been found to exist in Florida under special circumstances, Defendants' factual assertions do not support the finding of such a relationship here.[1]

Defendants also allege that Fla. Stat. § 501.137 imposes a statutory fiduciary duty on Sussman as "lender of money" to make timely payments of insurance and taxes from funds in escrow.  Counterclaims and Affirmative Defenses at ¶¶ 44-47.  This statute does not, however, convert a lender's payment obligation into a fiduciary duty.  Furthermore, Sussman complied with the statute by making timely payment of insurance and taxes. D.E. 169, Ex. 2, Plaintiff's Escrow Disbursement Account.

---

[1] A fiduciary relationship arises where "the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him. *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 519 (Fla. 3d DCA 1994) (citing *Klein v. First Edina Nat'l Bank*, 233 Minn. 418 (1972)).  A fiduciary relationship may also arise where "the lender 1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control." *Id.* (citing *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash. App. 456 (1982)).  Defendants do not proffer any facts that would support a finding of a fiduciary relationship between the parties other than Plaintiff's statutory duties to pay taxes and insurance premiums.  These statutory duties do not impose a fiduciary relationship between the parties, but, even if they did, Plaintiff did pay taxes and insurance premiums on the property.  D.E. 169, Ex. 2, Escrow Disbursement Account.  Defendants concede that Plaintiff maintained the property insured as they have alleged that Plaintiff in fact force-placed insurance on the property.

### *3. Count III - Accounting*

Count III asserts a counterclaim for an accounting and damages. "Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." *Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F. Supp. 2d 1276, 1285 (M.D. Fla. 1999) (holding that plaintiff's failure to allege that there was no adequate remedy at law prevented plaintiff from withstanding a motion to dismiss). *See also Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990).

There is no factual dispute that there was no fiduciary relationship between the parties and that this was not a "complex transaction." Moreover, when a judgment for breach of contract is obtainable, the remedy at law is considered adequate, thus precluding the need for the imposition of an equitable remedy such as an accounting. *Florida Software Sys.*, 46 F. Supp. 2d at 1285-86; *Kee*, 918 F.2d at 1541. The Weintraubs' failure to demonstrate that a remedy at law is inadequate precludes their claim for accounting. Indeed, the Weintraubs appear to believe that a remedy at law is adequate given their breach of contract claim in Count I.

### IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff Selig Sussman's Motion for Summary Judgment of Foreclosure [D.E. 169] is **GRANTED.** A final judgment in accordance with this Order shall be entered separately at a later date.

**DONE AND ORDERED** in Chambers, in Miami, Florida, this 22nd day of March 2007.

EDWIN G. TORRES
United States Magistrate Judge